UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED SOVEREIGN AMERICANS,
INC, MICHIGAN FAIR ELECTIONS
INSTITUTE, TIMOTHY MAURO-           No. 24-12256
VETTER, BRADEN GIACOBAZZI,
PHANI MANTRAVADI, PHILIP            HON. ROBERT J. WHITE
O'HALLORAN, DONNA
BRANDENBURG, and NICK SOMBERG,      MAG. ANTHONY P. PATTI

     Petitioners,
                                    **STATE RESPONDENTS'**
v                                   **MOTION TO DISMISS**

JOCELYN BENSON, in her official
capacity as Secretary of State, BUREAU
OF ELECTIONS, DANA NESSEL, in her
official capacity as Attorney General of
Michigan, and MERRICK GARLAND, in
his official capacity as Attorney General of
the United States,

     Respondents.

_____

Bruce E. Castor, Jr.                Heather S. Meingast (P55439)
Attorney for Petitioners            Erik A. Grill (P64713)
1219 Spruce Street                  Assistant Attorneys General
Philadelphia, PA 19107              Attorneys for Respondents Benson,
215.546.1000                        Nessel and Bureau of Elections
bcastor@mtvlaw.com                  P.O. Box 30736
                                    Lansing, Michigan 48909
Aaron T. Speck (P38727)             517.335.7659
Attorney for Petitioners            meingasth@michigan.gov
20619 Ecorse Road                   grille@michigan.gov
Taylor, Michigan 48180
313.381.9000
specklaw@juno.com

_____/

## STATE RESPONDENTS' MOTION TO DISMISS

Defendants Michigan Secretary of State Jocelyn Benson, Michigan Bureau of Elections, and Michigan Attorney General Dana Nessel move to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for the following reasons:

1. Plaintiffs allege that Michigan's 2022 election failed to meet the minimum standards of reliability set by Congress.

2. Plaintiffs assert that the certification of the 2022 election was based on inaccurate results.

3. Based on their allegations about the 2022 election, Plaintiffs ask that this court preemptively intervene in the Michigan's 2024 election in order to prevent state officials from certifying results, citing federal and state law.

4. Plaintiffs demand an extraordinary form of mandamus that essentially amounts to a court takeover of the administration of Michigan's election for the remainder of the year.

5. Plaintiffs' claims should be dismissed because this Court may not exercise subject-matter jurisdiction.

6. Plaintiffs' claims should be dismissed because Plaintiffs fail to establish that they have standing to sue.

7. Plaintiffs' claims should be dismissed because Plaintiffs fail to establish that their claims are ripe for suit.

8. Plaintiffs' claims should be dismissed because Plaintiffs do not establish subject-matter jurisdiction under 28 U.S.C. § 1651, 28 U.S.C. § 1361, or supplemental jurisdiction.

9. Plaintiffs' claims should be dismissed for failure to plead a claim upon which relief can be granted.

10. Plaintiffs' state law claims should be dismissed because they are barred by the Eleventh Amendment.

11. Plaintiffs' claims about the 2022 election should be dismissed because they are moot.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Secretary of State Jocelyn Benson, Attorney General Dana Nessel, and the Michigan Bureau of Elections respectfully request that this Honorable Court enter an Order granting their motion and dismissing the Complaint in its entirety and with prejudice, together with any other relief that the Court determines to be appropriate under the circumstances, including an order of sanctions or attorney fees.

Respectfully submitted,

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Respondents Benson,
Nessel, and Bureau of Elections
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Dated:  October 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorneys General
PO Box 30736
Lansing, Michigan 48909
517.335.7659

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED SOVEREIGN AMERICANS,
INC, MICHIGAN FAIR ELECTIONS
INSTITUTE, TIMOTHY MAURO-
VETTER, BRADEN GIACOBAZZI,
PHANI MANTRAVADI, PHILIP
O'HALLORAN, DONNA
BRANDENBURG, and NICK SOMBERG,

No. 24-12256

HON. ROBERT J. WHITE

MAG. ANTHONY P. PATTI

    Petitioners,

v

JOCELYN BENSON, in her official
capacity as Secretary of State, BUREAU
OF ELECTIONS, DANA NESSEL, in her
official capacity as Attorney General of
Michigan, and MERRICK GARLAND, in
his official capacity as Attorney General of
the United States,

    Respondents.

**STATE RESPONDENTS'
BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

_____

Bruce E. Castor, Jr.
Attorney for Petitioners
1219 Spruce Street
Philadelphia, PA 19107
215.546.1000
bcastor@mtvlaw.com

Aaron T. Speck (P38727)
Attorney for Petitioners
20619 Ecorse Road
Taylor, Michigan 48180
313.381.9000
specklaw@juno.com
_____/

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Respondents Benson,
Nessel and Bureau of Elections
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

i

**STATE RESPONDENTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Respondents Benson,
Nessel, and Bureau of Elections
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

Dated:  October 1, 2024

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................. i

Index of Authorities ...................................................................................... iii

Concise Statement of Issues Presented ...................................................... vi

Introduction ....................................................................................................1

Statement of Facts ..........................................................................................2

Standard of Review ........................................................................................6

Argument .........................................................................................................8

I.    Plaintiffs fail to establish that this Court may exercise subject-matter
      jurisdiction to entertain Plaintiffs' complaint...................................8

      A.    Plaintiffs fail to establish that they have standing to bring the
            claims in this complaint..........................................................8

            1.    Plaintiffs fail to sufficiently allege an injury-in-fact. ................9

      B.    Plaintiffs lack subject-matter jurisdiction because they fail to
            establish that their claims are ripe for suit ..........................12

      C.    Plaintiffs lack subject-matter jurisdiction because they fail to
            raise a federal question. ........................................................13

            1.    The National Voter Registration Act does not provide
                  causes of action to Plaintiffs. ....................................14

            2.    The Help America Vote Act does not provide causes of
                  action to Plaintiffs. ...................................................15

      D.    Plaintiffs cannot establish subject-matter jurisdiction under 28
            U.S.C. § 1651, 28 U.S.C. § 1361, or 28 U.S.C. § 1331. .....................16

II.   Plaintiffs fail to state a claim upon which relief can be granted. .................19

III.  Plaintiffs' claims are barred by the Eleventh Amendment...........................20

IV.    Plaintiffs' claims about the 2022 election must be dismissed because
        they are moot. .................................................................................23

Conclusion and Relief Requested ...........................................................25

Certificate of Service ..............................................................................26

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989)............................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................ 7, 19, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................7, 19

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ..................................................16

*Church of Scientology v. United States,* 506 U.S. 9 (1992) ....................................23

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)............................................................24

*Ex parte Lévitt*, 302 U.S. 633 (1937)......................................................................11

*Georgia Voter Alliance v. Fulton County*, 499 F. Supp. 3d 1250 (N.D. Ga. 2020)......................................................................................................................16

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................................................22

*Haggard v. State of Tenn.*, 421 F.2d 1384 (6th Cir. 1970).....................................18

*Hans v. Louisiana*, 134 U.S. 1 (1890) ...................................................................22

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014)...............................23

*Lance v. Coffman*, 549 U.S. 437 (2007) ...................................................................9

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990)..................................................23

*Los Angeles County v. Davis,* 440 U.S. 625 (1979) ...............................................23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................... 8, 9, 10

*Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)..............................................................8

*McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453 (6th Cir. 1997)......................................................................................................................23

*Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010)........................................................................................................... 12, 13

*Mosely v. Hairson*, 920 F.2d 409 (6th Cir. 1990) .................................................24

*Murray v. U.S. Dep't of Treasury*, 681 F.3d 744 (6th Cir. 2012) ...........................8

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) ..................................................12

*Ohio A. Phillip Randolph Inst. v. Husted*, 350 F. Supp. 3d 662 (S.D. Ohio 2018) ...................................................................................................................15

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320 (6th Cir. 1990) ..................6

*O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168 (D. Colo. 2021) ...................................................................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .................. 21, 22

*Phillips v. DeWine*, 841 F.3d 405 (6th Cir. 2016) ....................................................8

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) .....................................................................................................................6

*Rogers v. Stratton Indus.*, 798 F.2d 913 (6th Cir. 1986) ..........................................6

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) ...................................................................................................................16

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ...............11

*Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996); ...............................................21

*Texas Voters Alliance v. Dallas County*, 495 F. Supp. 3d 441 (E.D. Tex. 2020) ...................................................................................................................16

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) ....................................................................................7

*Turker v. Ohio Dep't Rehab. & Corr.*, 157 F.3d 453 (6th Cir. 1998)....................22

*United States v. Denedo*, 556 U.S. 904 (2009) .......................................................17

*United States v. Hays*, 515 U.S. 737 (1995) ..........................................................11

*United States v. Richardson*, 418 U.S. 166 (1974) ................................................11

*Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) .............................22

*Valley Forge Christian College*, 454 U.S. 464 (1982) ............................................11

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) .........................................21

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir., 2020) ........................................24

## Statutes

28 U.S.C. § 1651 ....................................................................................................16

28 U.S.C. § 1331 ............................................................................... i, 13, 16, 18

28 U.S.C. § 1361 ........................................................................................... *passim*

28 U.S.C. § 1651 .................................................................................. i, vii, 5, 16

52 U.S.C. § 20503(a) ............................................................................................14

52 U.S.C. § 20510 .................................................................................................14

52 U.S.C. § 20510(b)(1) ......................................................................................14

52 U.S.C. § 20510(b)(2) ......................................................................................15

52 U.S.C. § 20901 ............................................................................................5, 10

52 U.S.C. § 21081(a) ............................................................................................15

52 U.S.C. § 21111 .................................................................................................16

52 U.S.C. § 21112(a)(1) .......................................................................................16

52 U.S.C. § 20501 ............................................................................................5, 10

Mich. Comp. Laws § 168.842 ...........................................................................4, 24

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................... 19, 20

Fed. R. Civ. P. 8(a) .............................................................................................1, 7

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs' claims should be dismissed because this Court may not exercise subject-matter jurisdiction?

2.  Whether Plaintiffs' claims should be dismissed because they fail to establish that they have standing to sue?

3.  Whether Plaintiffs' claims should be dismissed because they fail to establish that their claims are ripe for suit?

4.  Whether Plaintiffs' claims should be dismissed because Plaintiffs do not establish subject-matter jurisdiction under 28 U.S.C. § 1651, 28 U.S.C. § 1361, or supplemental jurisdiction?

5.  Whether Plaintiffs' claims should be dismissed for failure to plead a claim upon which relief can be granted?

6.  Whether Plaintiffs' claims are barred by the Eleventh Amendment?

7.  Whether Plaintiffs' claims about the 2022 election must be dismissed because they are moot?

## INTRODUCTION

This case seeks to prevent certification of the 2024 election. Plaintiffs raise questions about the 2022 election—nearly two years after it occurred—as grounds to prevent certification of the yet-unknown results of the 2024 election.

Like other lawsuits in its vein, this lawsuit's allegations of election fraud and irregularity are far-fetched and nonsensical. Plaintiffs assert that defects in Michigan's 2022 election render its certification of results that year unreliable. Based on that assertion, Plaintiffs demand that this Court intervene in the state's election administration and manage Michigan's 2024 election through the end of the year.

Plaintiff United Sovereign Americans has filed nearly the same complaint in at least eight federal district courts throughout the country, asking for similar relief.[1] This is not a well-pleaded complaint. Fed. R. Civ. P. 8(a). It is a serially

---

[1] *See, e.g.*, *United Sovereign Americans v. Raffensperger*, No. 2:24-cv-00104-LGW-BWC (S.D. Ga. filed Sept. 11, 2024); *United Sovereign Americans v. Griswold*, No. 1:24-cv-02499-SBP (D. Colo. filed Sept. 10, 2024); *United Sovereign Americans, Inc. v. North Carolina State Board of Elections*, No. 5:24-cv-500-M-RJ (E.D.N.C. filed Aug. 28, 2024); *United Sovereign Americans, Inc. v. Nelson*, No. 2:24-cv-00184-Z (N.D. Tex. filed Aug. 27, 2024); *United Sovereign Americans, Inc. v. Byrd*, No. 4:24-cv-00327-MW-MAF (N.D. Fla. filed Aug. 19, 2024); *United Sovereign Americans, Inc. v. Ohio*, No. 5:24-cv-01359-JRA (N.D. Ohio filed Aug. 8, 2024); *United Sovereign Americans, Inc. v. Pennsylvania*, No. 1:24-cv-01003-DFB (M.D. Pa. filed June 18, 2024); *United Sovereign Americans, Inc. v. Maryland State Board of Elections*, No. 1:24-cv-00672-SAG (D. Md. dismissed May 8, 2024), *appellant's brief filed*, No. 24-1449 (4th Cir. July 9, 2024).

pleaded complaint.  Its allegations are simply meritless, and Plaintiffs fail to assert viable legal claims. As a result, their complaint must be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiffs filed the current complaint against Defendants on August 28, 2024. (ECF No. 1, Compl., PageID.1.)  Plaintiffs' complaint consists of over 200 numbered paragraphs and three exhibits, in which they raise a litany of claimed "issues" with Michigan's 2022 election.

Plaintiffs are registered Michigan voters and a special interest group, United Sovereign Americans, an organization representing itself as a 501(c)(4) on its website.  (ECF No. 1, Compl., PageID.15-16.)  Defendants are Secretary of State Jocelyn Benson, Michigan Attorney General Dana Nessel, and U.S. Attorney General Merrick Garland in their official capacities, as well as the Michigan Bureau of Elections.

Plaintiffs allege that Michigan's 2022 election failed to meet the minimum standards of reliability set by Congress, "rendering the certified election results that year unreliable."  (ECF No. 1, Compl., PageID.3, ¶ 1.)  But Plaintiffs do not to seek to "challenge the outcome of the 2022 federal election in Michigan." (*Id.* at p. 7, ¶ 21.)  Instead, they allege that their real challenge is to "the certification by Michigan election officials of the 2022 election," seeking to somehow distinguish the outcome of an election from the certification of that outcome.  (*Id.* at ¶ 22.)

2

Plaintiffs assert that the certification of the 2022 election "was done despite the integrity of the election being suspect on account of apparent error rates occurring in that election that exceeded the error rate congress permits before federal election results cannot be relied upon as accurate…." (*Id.*)

Seeking to link their claims about the 2022 election to the 2024 election, Petitioners allege that they and all Michigan voters will "suffer damages" "[i]f the 2022 election performance is repeated in 2024." (ECF No. 1, Compl., PageID.4, ¶ 2.) As Plaintiffs later explain, that is because, "it is reasonable to believe that systematic issues which occurred in the 2022 combined Federal and state election in Michigan will continue uncorrected in 2024, 2026, 2028, etc., absent intervention by this Court." (*Id.*, at p. 7, ¶ 23.) That sentence is a concise representation of Plaintiffs' entire complaint.

Plaintiffs assert that Michigan's voter registration roll was inaccurate in the 2022 election. (ECF No. 1, Compl., PageID.34-36.) Moreover, they allege that Michigan counted votes from ineligible voters in the 2022 election. (*Id.* at 36-37.) They also allege that Michigan's 2022 election is invalid because its "voter system error rate" is higher than allowed under federal law. (*Id.* at p. 40, ¶ 194.)

Exhibit B of the complaint is a document produced by United Sovereign Americans and titled "Michigan's 2022 General Election Validity Scorecard." It asserts that there were 57,903,469 "votes altered post certification" in 2022.

(Plaintiff's Exhibit B.)  It is not clear what this number refers to, as the document does not explain its findings or methods.[2]  Plaintiffs also assert that there were 17,973 more votes than voters in 2022.  (ECF No. 1, Compl., PageID.39, ¶ 187.)

However, these claims come two years too late. The Michigan State Board of Canvassers was required to canvass results of the 2022 General Election by November 28, 2022.  Mich. Comp. Laws § 168.842.  The State Board did so and certified the results by a 4-0 vote.[3]  The results of the 2022 election became final at that time.

For their relief, Plaintiffs demand an extraordinary form of mandamus that essentially amounts to court supervision of Michigan's election for the remainder of the year.  Plaintiffs ask this Court to ensure the following:

- "that only properly registered voters cast votes,"
- "that only votes properly cast are counted" and "counted correctly,"
- "that all voting systems are compliant with all critical infrastructure requirements,"
- "that the authenticity of every ballot countered is proven by the maintenance of a comprehensive, unbroken chain of custody from the voter's hand to the final certified result,"
- "elections…are conducted with the transparency required by the law," and
- "clarifying and ordering that the currently accepted Federal definition 'to certify' is to attest that an official measurement is both accurate and the

---

[2] In 2022, Michigan had 8.17 million registered voters as of October 2022. *See* 2022 Voter Registration Totals, available at 2022 Voter Registration Totals (michigan.gov) (accessed Oct. 1, 2024).

[3] *See* November 28, 2022, meeting minutes, available at November 28 2022 Signed BSC Meeting Minutes (michigan.gov) (accessed Oct. 1, 2024).

finding of accuracy was reaching[sic] in a fully compliant manner." (ECF No. 1, Compl., PageID.4-5, ¶¶ 6-14.)

Plaintiffs translate these demands into the language of the law by seeking mandamus under 28 U.S.C. § 1651 and 28 U.S.C. § 1361.  (*Id.* at pp. 42-54.)

Plaintiffs' demands may be divided into four categories. First, Plaintiffs ask this Court for mandamus to "compel[] Respondents to ministerially correct the apparent errors in the 2022 elections data, ascertain to the Court's satisfaction why the 2022 errors occurred, and prevent the same errors from occurring in 2024." (*Id.* at p. 53.)  In short, Plaintiffs seek mandamus to challenge and revise the data from an election that happened two years ago.

Second, Plaintiffs seek mandamus to prevent Michigan officials from certifying the results of the 2024 election. Plaintiffs cite to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145, and the National Voter Registration Act ("NVRA"), 52. U.S.C. §§ 20501–20511, to compel this Court to order that "the State of Michigan may not certify the 2024 General Election unless and until the relevant Respondents have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and state law with fewer than the maximum errors permissible."  (*Id.* at 53.)

Third, Plaintiffs seek mandamus to enable the federal government to commandeer the state's voter registration system.  To do that, they demand that this Court order that Michigan "submit voter registration requests (and any existing

registrations reasonably in question) to the Department of Homeland Security to verify the citizenship or immigration status of persons seeking registration to vote." (*Id.*)

Fourth, Plaintiffs seek general mandamus to enforce all election laws and to compel state officials to prosecute anyone who disobeys the law. To do that, they ask for mandamus "requiring all public officials named as Respondents perform their duties as the law intended . . . [and] prosecut[e] persons or entities for failing to perform their duties in conformity to the law…." (*Id.* at 53-54.)

### STANDARD OF REVIEW

When considering a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)) (emphasis omitted).

Rule 12(b)(1) motions to dismiss generally come in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A facial attack on a complaint's subject-matter jurisdiction questions the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* In contrast, a factual attack questions the truthfulness of the facts in the pleading. When there is

a factual attack on a complaint's subject-matter jurisdiction, no presumptive truthfulness applies to the allegations. *Id.* For a factual controversy, the district court must weigh the conflicting evidence and has wide discretion. *Id.*

When considering a 12(b)(6) motion to dismiss for failure to state a claim, although the Court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434. To survive dismissal, the plaintiff's claim must be plausible. *Bell Atl. Corp.,* 550 U.S. at 555. The inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Whether the Eleventh Amendment precludes Plaintiffs' claim, and whether

Plaintiffs have Article III standing, are issues pertaining to this Court's subject-

matter jurisdiction properly raised under Rule 12(b)(1).  *See Lyshe v. Levy*, 854

F.3d 855, 857 (6th Cir. 2017).

## ARGUMENT

### I.   Plaintiffs fail to establish that this Court may exercise subject-matter jurisdiction to entertain Plaintiffs' complaint.

This Court should grant Defendants' motion to dismiss because it lacks

subject-matter jurisdiction for four reasons: there is a lack of (1) standing, (2)

ripeness, (3) federal question jurisdiction, and (4) statutorily authorized or

supplemental jurisdiction.

#### A.   Plaintiffs fail to establish that they have standing to bring the claims in this complaint.

When a plaintiff lacks standing to pursue a claim, the court lacks subject-

matter jurisdiction.  *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989) and

*Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012).  To have

standing, a plaintiff must establish four elements: (1) an "injury in fact," (2) "a

causal connection between the injury and the conduct complained of," and (3) that

it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed

by a favorable decision.'"  *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016),

citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Standing doctrine exists to preserve the separation of powers. *Gill v. Whitford*, 585 U.S. 48, 65 (2018).  The Supreme Court has explained that the injury-in-fact requirement is a mechanism to ensure the "properly limited role" of "the courts in a democratic society."  *Id.*  Given these limitations, a federal court is not "a forum for generalized grievances."  *Id.*, citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

But Plaintiffs ask this Court to ignore separation of powers principles, step beyond its limited role, and essentially take over Michigan's election administration.  There are three distinct ways in which Plaintiffs lack standing.

> **1.     Plaintiffs fail to sufficiently allege an injury-in-fact.**

> **a.     Plaintiffs claims of widespread error are speculative.**

First, Plaintiffs' allegations about the 2022 election fail to meet the injury-in-fact requirement.  There were not "widespread errors" in Michigan's 2022 election.  Rather, Plaintiffs allegations involving numbers like 57,903,469 "votes altered" are mere speculations based on adventurous interpretations of election data.  (Plaintiff's Exhibit B.)  And speculative injuries about what happened in the past and what will happen in the future do not give rise to injuries-in-fact.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

But further, assuming without conceding that there were errors in the 2022 election, the supposed "errors" alleged would still not amount to an injury-in-fact.

As Plaintiffs explain in their complaint, "it is reasonable to believe that systematic issues which occurred in the 2022 combined Federal and state election in Michigan will continue uncorrected in 2024, 2026, 2028, etc. absent intervention by this Court." (ECF No. 1, Compl., PageID.7, ¶ 23.)  As such, Plaintiffs essentially acknowledge that their claims are premised upon speculation.

But it is not enough for it to be "reasonable" that injury will occur. The Supreme Court has explained that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561.  Plaintiffs have simply failed to establish that injury is likely to occur without this Court's intervention.

### b. Plaintiffs demand that the government act in conformity with the law.

Second, Plaintiffs' requested relief amounts to asking the government to obey and enforce the law, which is not a basis for standing.  Plaintiffs rely generally on the state's obligations to enforce HAVA, 52 U.S.C. §§ 20901–21145; the NVRA, 52. U.S.C. §§ 20501–20511; and provisions of the Michigan Election Law.  (ECF No. 1, Compl., PageID.53-54.)  But courts have held that "an asserted right to have the Government act in accordance with law is not sufficient" to demonstrate standing. *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990).  Here, Plaintiffs' request for mandamus "requiring all public officials named as Respondents perform their duties as the law intended," (ECF No. 1, Compl.,

PageID.53-54), is the precise kind of demand that the Supreme Court found insufficient for standing in *Whitmore*. 495 U.S. at 160.

### c.   Plaintiffs allege only generalized grievances.

Third, Plaintiffs' allegations amount to generalized grievances.  (ECF No. 1, Compl., PageID.16-17, 34-35; Plaintiff's Exhibit B.)  They assert that Michigan committed errors in voter registration, ballot counting, and other areas in 2022. (*Id.*)  But the Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743 (1995), citing *Valley Forge Christian College*, 454 U.S. 464 (1982); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974); *United States v. Richardson*, 418 U.S. 166 (1974); *Ex parte Lévitt*, 302 U.S. 633 (1937) (per curiam).  Plaintiffs' allegations about the 2022 election—even if they were true (which they are not)—amount to merely generalized grievances applicable to all qualified voters in the state of Michigan.  These generalized grievances are not a basis for standing.

Indeed, in another lawsuit filed against Michigan officials after the 2020 election, another court held that "generalized grievances about the conduct of an election cannot be the basis for a federal lawsuit…The claimed injury cannot be generalized, affecting everyone in the same way." *O'Rourke v. Dominion Voting*

*Sys. Inc.*, 552 F. Supp. 3d 1168, 1180 (D. Colo. 2021), modified on

reconsideration, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5,

2021). The same court explained that plaintiffs asserting "generalized, non-

individual, complaints about how the election was conducted" were dismissed,

including "cases where the plaintiffs purported to be registered voters." *Id.*, at

1181.

The wave of implausible 2020 election lawsuits, most of which were

dismissed for lack of standing, *id.*, is eerily similar to the present dispute.  This

lawsuit should be dismissed for the same reasons.

**B.      Plaintiffs lack subject-matter jurisdiction because they fail to
establish that their claims are ripe for suit.**

As to their claims about the 2024 election, Plaintiffs fail to state claims that

are ripe for review, and this Court should dismiss those claims for that reason.

*Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) ("A court lacks jurisdiction

over the subject matter if the claim is not yet ripe for judicial review.").  To decide

whether a dispute has ripened into a judicially reviewable action, courts ask two

questions: "(1) is the dispute 'fit' for a court decision in the sense that it arises in 'a

concrete factual context' and involves 'dispute that is likely to come to pass'? and

(2) what are the risks to the claimant if the federal courts stay their hand?"  *Miles*

*Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).

Plaintiffs themselves admit that their injuries in the 2024 election have not yet occurred but instead that "it is reasonable to believe" that they will occur later in the year.  (ECF No. 1, Compl., PageID.7, ¶ 23.)  Such allegations about the 2024 election are not ripe because they do not arise in "a concrete factual context." *Miles Christi Religious Ord.*, 629 F.3d at 537.  The context of Plaintiffs' allegations is plainly not factual—they are only Plaintiffs' subjective expectations without any basis in fact.  Second, even if the allegations were factual, there would be no "risk to the claimant if the federal court stays their hand" because there is no reason the Plaintiffs would be unable to file suit if events later occur that would give rise to an actual violation of law. *Id.*

Plaintiffs' claims are plainly premature and are unripe for adjudication by this Court.

### C.   Plaintiffs lack subject-matter jurisdiction because they fail to raise a federal question.

Plaintiffs have also failed to plead a cognizable federal question. By congressional grant, this Court possesses subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the Unites States."  28 U.S.C. § 1331.  Here, while Plaintiffs cite broadly to federal statutes like HAVA and the NVRA, the sections cited in the complaint simply do not provide legal causes of action for the Plaintiffs.  The absence of a federal cause of action leaves this Court without jurisdiction to entertain a suit under 28 U.S.C. § 1331.

### 1.   The National Voter Registration Act does not provide causes of action to Plaintiffs.

First, Plaintiffs cite the NVRA extensively.  *See, e.g.*, ECF No. 1, Compl., PageID.22-24.  This federal statute standardizes the states' administration of registered voter rolls for federal elections and establishes voter registration procedures for federal elections.  52 U.S.C. § 20503(a).  The law also establishes requirements with respect to the administration of voter registration**,** such as permitting the removal of an individual from a voter registration list only by way of that person's request, death, disability due to conviction or incapacity, or change in residence.  *Id.* at § 20507(a)(4).  Last, NVRA requires states to maintain public disclosure of voter registration activities. *Id.* at § 20507(i)(1).

Congress entrusted NVRA's enforcement to the Attorney General or, if certain requirements are met, to private individuals.  52 U.S.C. § 20510.  But the private right of action does not give individuals the right to go straight to federal court. NVRA creates a notice requirement that must be met before private individuals have a cause of action.  52 U.S.C. § 20510(b)(1).

According to NVRA, "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1).  Then, "[if] the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the

14

date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2). As one court has explained, the "purpose of the notice requirement is to afford the State an opportunity to cure the deficiency and/or remedy the alleged violation before court intervention becomes necessary." *Ohio A. Phillip Randolph Inst. v. Husted*, 350 F. Supp. 3d 662, 672 (S.D. Ohio 2018).

Here, Plaintiffs do not even allege that they provided a written notice of the alleged violations to Secretary Benson, Michigan's chief election official, and no such notice is included as an exhibit to the complaint. Thus, Plaintiffs have not met the notice requirement and do not have a cause of action against Defendants. Accordingly, this court should dismiss all claims under NVRA.

## 2. The Help America Vote Act does not provide causes of action to Plaintiffs.

Second, Plaintiffs cite the HAVA extensively. *See, e.g.*, ECF No. 1, Compl., PageID.24-27. HAVA imposes national standards on the "voting system[s] used in an election for Federal office," including standards for error rates. 52 U.S.C. § 21081(a). HAVA accomplishes enforcement of its requirements by two methods. First, the law authorizes the United States' Attorney General to bring civil actions to seek declaratory and injunctive relief "as may be necessary to carry out" the voting system requirements under sections 21081, 21082, and 21083 of the law.

15

52 U.S.C. § 21111.  Second, the law requires states receiving HAVA funding to "establish and maintain State-based administrative complaint procedures," for the adjudication and disposition of complaints relating to HAVA's requirements.  52 U.S.C. § 21112(a)(1)&(2)(B).

But HAVA does not provide a private cause of action against election officials who administer voting systems pursuant to HAVA's requirements.  When asked to acknowledge private causes of action under HAVA, federal courts throughout the nation have consistently held that HAVA creates no private cause of action.  *See, e.g.*, *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *American Civil Rights Union*, 872 F.3d 175, 181 (3d Cir. 2017); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004); *Georgia Voter Alliance v. Fulton County*, 499 F. Supp. 3d 1250, 1256 (N.D. Ga. 2020); *Texas Voters Alliance v. Dallas County*, 495 F. Supp. 3d 441, 458-59 (E.D. Tex. 2020). Accordingly, this court should dismiss all claims under HAVA.

In sum, because Plaintiffs have failed to plead federal causes of action under both NVRA and HAVA, they have failed to raise actionable federal questions.

**D.    Plaintiffs cannot establish subject-matter jurisdiction under 28 U.S.C. § 1651, 28 U.S.C. § 1361, or 28 U.S.C. § 1331.**

As an apparent last resort, Plaintiffs also assert three additional sources of subject-matter jurisdiction: 28 U.S.C § 1651, 28 U.S.C. § 1361, and this Court's supplemental jurisdiction under 28 U.S.C. § 1331.  (ECF No. 1, Compl.,

PageID.15, ¶¶ 72-74.)  But none of these sources of authority grant subject-matter jurisdiction over the parties in this dispute.

First, Plaintiffs cite § 1651, the "All Writs" Act, which states: "(a)The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  But § 1651 does not create a private right of action, as is evident from its text. Instead, the Supreme Court has interpreted the text to mean that "a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."  *United States v. Denedo*, 556 U.S. 904, 911 (2009).

Thus, the § 1651 is not an independent source of subject-matter jurisdiction, and merely provides that courts have power to issue relief in cases *over which it already has jurisdiction*. Otherwise, the statute would quickly have become a catch-all for any claims implicating federal law and would defeat the purpose of Article III's case or controversy requirement.  Where there is no subject-matter jurisdiction, this Court cannot exercise the All Writs Act under § 1651.  *Denedo*, 556 U.S. at 911.  Moreover, the Sixth Circuit has interpreted the All Writs Act to provide limited jurisdiction only to cases in which a court has "special statutory authority" or "as ancillary to and in aid of jurisdiction otherwise vested in it."

*Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970). As neither condition has been met here, this Court cannot issue any writ under that Act.

Second, Plaintiffs assert that this Court has jurisdiction under 28 U.S.C § 1361, the "Mandamus Act," which states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." But, as is evident from its text, the Mandamus Act grants federal courts original jurisdiction over *federal* officials and *federal* agencies. But the State Defendants here are not federal officials. Therefore, this Court cannot exercise jurisdiction over them under the Mandamus Act.

Last, Plaintiffs claim that this Court has supplemental jurisdiction under 28 U.S.C. § 1331, arguing that "the case presents substantial questions of federal law, and the state claims are so related to the federal claims that they form part of the same case or controversy." (ECF No. 1, Compl., PageID.15, ¶ 74) But, as previously explained in regard to HAVA and NVRA, Plaintiffs have failed to plead a federal question in the first place, so there is no connection between federal and state claims. Therefore, there can be no supplemental jurisdiction over any state law claims.

**II.     Plaintiffs fail to state a claim upon which relief can be granted.**

Alternatively, even if this Court had subject-matter jurisdiction to entertain

Plaintiffs' compliant, this case should still be dismissed for failure to state a claim

upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Of course, as noted

above, Plaintiffs have failed to establish any legal cause of action for their claims,

and so the claims fail as a matter of law on that basis alone.  But moreover, the

Plaintiffs have failed to state a claim that is legally plausible on its face.

To survive a motion to dismiss, Plaintiffs' complaint must contain facts

sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*,

550 U.S. at 570.  A claim is facially plausible when a plaintiff "pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.

Plaintiffs' complaint fails to meet this standard. While Plaintiffs' Complaint

states many factual allegations, none of them are facially plausible.  In the

Complaint's Exhibit B, a document titled "Michigan's 2022 General Election

Validity Scorecard," Plaintiffs present most of the supposed factual bases for their

claims.  This one-page document lists 38 separate numerical values, each

supposedly representing a measure of something that went wrong in Michigan's

2022 election.  (Plaintiff's Exhibit B.)

But Plaintiffs assert several implausible claims with unrealistic numbers, including that there were 57,903,469 "votes altered post certification," 47,805 "illegal addresses," and 369,071 "ballots in error" in Michigan's 2022 election. (*Id.*)  Plaintiffs claim these figures are "extracted" from "an official data source of the Michigan Voter database" obtained through FOIA requests.  (*Id.*)  But Plaintiffs do not identify the actual information that was used to arrive at these numbers, what the "original data source" was, or even which entity answered the FOIA request.  Worse yet, this document fails to explain its methods, define its terms, or show how numbers so large can come from a state with fewer than ten million registered voters.  There is simply no plausible basis for any of Plaintiffs' claims.  In other words, the Plaintiffs have simply failed to demonstrate a claim that is plausible.

The Complaint's far-fetched statistics on their face lack any basis in sound methods or facts.  Thus, it is unlikely that this Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Accordingly, this Court should dismiss the entire complaint for failure to state a claim for which relief may be granted under Fed. R. Civ. Proc. 12(b)(6).

## III.   Plaintiffs' claims are barred by the Eleventh Amendment.

Having previously established that Plaintiffs failed to plead any actionable federal questions, Plaintiffs' sole remaining claim against the State Defendants is

based entirely on alleged violations for the Michigan Election Law.  (ECF No. 1, PageID.27-29.)

In their state law claim, Plaintiffs fail to explain exactly what state law has been violated.  (*Id.*)  Most of that section of the Complaint merely recites the text of the Michigan Election Law, and only one paragraph offers a claim.  (*Id.*)  In Paragraph 143, Plaintiffs state in conclusory manner that "Michigan has implemented a system that does not guarantee accuracy or compliance with legal mandates requiring the state to ensure that only eligible voters may register and vote."  (*Id.* at p. 29, ¶ 143.)  It is entirely unclear what the State Defendants have done that violates any section of Michigan Election Law.

Regardless, the Court cannot consider this claim because State Defendants are immune from state-law claims in federal court.

The Eleventh Amendment bars state-law claims against a state and its agencies unless the state has waived its immunity, consented to be sued, or Congress has abrogated that immunity, none of which exceptions apply here.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58, (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This immunity extends to state and state agency officers and employees who are sued in their official capacities because "[s]uits against state

21

officials in their official capacity [are] treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Eleventh Amendment immunity is premised on two "presupposition[s]": "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe*, 517 U.S. at 54 (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).

To be sure, state officials' Eleventh Amendment immunity in federal court is limited by the doctrine of *Ex Parte Young*, which applies "when a federal court commands a state official to do nothing more than from refrain from violating *federal* law." *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 248 (2011) (emphasis added). *Ex Parte Young*'s exception to Eleventh Amendment immunity is driven by "the need to promote the supremacy of federal law." *Pennhurst*, 465 U.S. at 105 (emphasis added). That need is "wholly absent, however, when a plaintiff fails to state a claim about federal law and, beyond that, alleges that a state official has violated *state* law." *Id.* at 106. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* As a result, *Ex Parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Id.*

By pursuing this quintessential state-law claim, Plaintiffs put themselves squarely within the application of the Eleventh Amendment.  For these reasons, any state law claims against the State Defendants must be dismissed.

## IV. Plaintiffs' claims about the 2022 election must be dismissed because they are moot.

Lastly, Plaintiffs' complaint must also be dismissed because its central allegations about the 2022 election are moot.

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.  *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  Federal courts have a continuing duty to ensure that they adjudicate only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties.  *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir. 1997) (en banc).

If "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," then the case is moot and the court has no jurisdiction.  *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979).  A "live" controversy is one that "persists in 'definite and concrete' form even after intervening events have made some change in the parties' circumstances." *Mosely*

*v. Hairson*, 920 F.2d 409, 414 (6th Cir. 1990) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)).

Here, Plaintiffs' Complaint challenges "the verification by Michigan election officials of the 2022 election" and seeks mandamus to revise election data. (ECF No. 1, Compl., PageID.7, 53.)  That relief is beyond the ability of this Court to grant.  As stated previously, the Michigan Board of State Canvassers was required to canvass results of the 2022 General Election by November 28, 2022. Mich. Comp. Laws § 168.842.  It has been nearly two years since that election was certified, and there is no live controversy surrounding that election or its results.

As the Eleventh Circuit Court of Appeals observed in a post-election lawsuit brought to specifically overturn the results of the 2020 presidential election:

> "We cannot turn back the clock and create a world in which" the 2020 election results are not certified. *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015). And it is not possible for us to delay certification nor meaningful to order a new recount when the results are already final and certified.

*Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir., 2020).

The named Defendants, to the extent they are charged with election duties, have already performed the duties they have under the law with respect to the administration and certification of the 2022 general election.  There is no mechanism available to de-certify Michigan's election results or to adjust the data reporting the results.

The premise on which all of Plaintiffs' allegations hinge is therefore moot. Like the 2020 lawsuits, Plaintiffs ask this Court to turn back the clock. But that simply cannot be done.  Accordingly, this Court should grant Defendants' motion to dismiss.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Secretary of State Jocelyn Benson, Attorney General Dana Nessel, and the Michigan Bureau of Elections respectfully request that this Honorable Court grant their motion to dismissing the Complaint in its entirety and with prejudice, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

/s/Heather S. Meingast
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Respondents Benson.
Nessel and Bureau of Elections
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Dated:  October 1, 2024

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorneys General
PO Box 30736
Lansing, Michigan 48909
517.335.7659