UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United Sovereign Americans, Inc., et al., | |
| Plaintiffs, | Civil No. 24-12256 |
| v. | Honorable Robert J. White<br>Mag. Judge Anthony P. Patti |
| Jocelyn Michelle Benson, et al., | |
| Defendants. | |

## <u>FEDERAL DEFENDANT'S MOTION TO DISMISS</u>

Defendant, Merrick Garland, Attorney General, U.S. Department of Justice, by his attorneys, Dawn N. Ison, United States Attorney for the Eastern District of Michigan, and Priya Bodary, Assistant United States Attorney, moves to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The grounds for this motion are set forth more fully in the attached brief.

Pursuant to Local Rule 7.1(a), counsel for Federal Defendant requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

**Dawn N. Ison**
United States Attorney

s/Priya Bodary

**Priya Bodary** (CA319527)
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
(313) 226-0831
Email:  Priya.Bodary@usdoj.gov

Date:  November 18, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United Sovereign Americans, Inc., et al., | |
| Plaintiffs, | Civil No. 24-12256 |
| v. | Honorable Robert J. White<br>Mag. Judge Anthony P. Patti |
| Jocelyn Michelle Benson, et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF
## FEDERAL DEFENDANT'S MOTION TO DISMISS

### ISSUES PRESENTED

I.    Whether the Court lacks jurisdiction because Plaintiffs cannot establish constitutional standing to sue.

II.    Whether the Court lacks jurisdiction over Plaintiffs' mandamus claim because there is no clear duty to act and Plaintiffs cannot establish they are entitled to extraordinary relief.

III.    Whether Plaintiffs fail to state a claim under the All Writs Act because there is no mandamus jurisdiction.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................v

INTRODUCTION .................................................................................................1

BACKGROUND ...................................................................................................2

LEGAL STANDARD............................................................................................4

ARGUMENT .........................................................................................................5

    I.  Plaintiffs Lack Standing to Sue Defendant. ....................................................5

        A.     Plaintiffs fail to establish injury in fact. ...............................................6

        B.     Plaintiffs do not meet causation or redressability. .............................11

    II.  The Court Lacks Jurisdiction Over Plaintiffs' Mandamus Claim.................13

    III.  Plaintiffs' All Writs Act Claim Must Be Dismissed..................................16

CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33 (1980) ........................................................................ 14

*Arizona v. Biden*,
    40 F. 4th 375 (6th Cir. 2022) ................................................... 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 5

*Carson v. U.S. Off. of Special Couns.*,
    633 F.3d 487 (6th Cir. 2011) ......................................................... 14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................... 6, 9, 10

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .................................................................. 10–11

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ...................................................................... 14

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) ........................................................... 5

*Jarrett v. Ashcroft*,
    24 F. App'x 503 (6th Cir. 2001) ..................................................... 15

*Leisure v. FBI of Columbus, Ohio*,
    2 F. App'x 488 (6th Cir. 2001) ....................................................... 15

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................... 6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................ *passim*

*Maczko v. Joyce*,
    814 F.2d 308 (6th Cir. 1987) ................................................... 14, 15

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
    895 F.2d 266 (6th Cir. 1990) ........................................................... 4

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985) ...................................................................... 16, 17

*Peek v. Mitchell*,
    419 F.2d 575 (6th Cir. 1970) .............................................................. 15

*Republican Nat'l Comm. v. Benson*,
    No. 24-262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024) ......................... 11

*Shelby Advocs. for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) ......................................................... 8, 9

*Spokeo Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................... 6

*Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002) ......................................................................... 17

*United States v. N.Y. Tel.*,
    434 U.S. 159 (1977) ....................................................................... 16

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994) ................................................................ 4

*United States v. Texas*,
    599 U.S. 670 (2023) .............................................................. *passim*

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ....................................................................... 10

**Statutes**

28 U.S.C. § 1361 ................................................................. 13, 14, 17

28 U.S.C. § 1651 ........................................................................ 16

52 U.S.C. § 21081 ...................................................................... 16

**Rules**

Fed. R. Civ. P. 12 ...................................................................... 5

**Other**

U.S. Election Assistance Comm'n, 2015 Voluntary Voting System Guidelines .. 15

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)

*Maczko v. Joyce*, 814 F.2d 308 (6th Cir. 1987)

*United States v. Texas*, 599 U.S. 670 (2023)

## INTRODUCTION

This is a purported voting rights case brought by two organizations and six individual Michigan residents, grouped as plaintiffs. Broadly speaking, Plaintiffs allege that Michigan's 2022 federal election did not meet minimum reliability standards, as they define them, so the results should not have been certified. Using this premise as their baseline, they extrapolate that "[i]f the 2022 election performance is repeated in 2024, [Plaintiffs] and all Michigan voters will suffer damages." (ECF No. 1, PageID.4.) They ask this Court to step in and take extraordinary action—to issue a writ of mandamus that orders the Attorney General of the United States ("Federal Defendant") to halt Michigan's 2024 federal election—so that Plaintiffs' allegations can be investigated and the 2024 election can proceed on Plaintiffs' terms.

Plaintiffs' claims against the Attorney General are flawed from all angles. First and foremost, this Court does not have jurisdiction to entertain Plaintiffs' claims. No Plaintiff has Article III standing, as Plaintiffs assert only speculative injuries and generalized grievances that are not fairly traceable to Federal Defendant or redressable by this Court. Plaintiffs' mandamus claim is also jurisdictionally deficient, as Plaintiffs cannot establish that Federal Defendant has a clear, nondiscretionary duty to act. Beyond these fatal jurisdictional issues,

Plaintiffs' claims are not well-pleaded. Federal Defendant seeks dismissal for lack of jurisdiction and failure to state a claim accordingly.

## BACKGROUND

This case is among a series of cases filed by plaintiff United Sovereign Americans against state election officials and Federal Defendant seeking writs of mandamus to prevent allegedly unreliable election results. In this case, the other plaintiffs are six individuals, Timothy Mauro-Vetter, Braden Giacobazzi, Phani Mantravadi, Philip O'Hallorin, Donna Brandenburg, and Nick Somberg, and nonprofit Michigan Fair Elections Institute. (ECF No. 1, PageID.13–14.)

Collectively, Plaintiffs allege that Michigan's 2022 federal election had "hundreds of thousands of voter registration apparent errors" uncovered by United Sovereign Americans' "expert data analysists." (*Id.* at PageID.34–35.) These alleged errors concern voter registration information, such as addresses, names, registration status, and age, and votes counted. (*Id.* at PageID.34–42.) Taking these purported identified errors, United Sovereign Americans computed error rates that Plaintiffs contend exceed the benchmark error rate applicable to "voting systems" under section 301 of the Help America Vote Act (HAVA) and the U.S. Election Assistance Commission's 2015 Voluntary Voting System Guidelines. (*Id.* at PageID.24–26, 37–42.) According to Plaintiffs, the error rates United Sovereign Americans calculated show that the 2022 election results are unreliable, and

Defendants have not acted to prevent these errors from recurring. (*Id.* at PageID.42–50.) Plaintiffs "believe and therefore aver" that these errors "will continue uncorrected . . . absent [judicial] intervention." (*Id.* at PageID.7.)

Based on all this, Plaintiffs ask the Court to issue a writ of mandamus under the All Writs Act and Mandamus Act that orders Federal Defendant to "comply with" and "enforce and police" the National Voter Registration Act (NVRA), HAVA, and "Michigan Election Law." (*Id.* at PageID.42–52.) As requested by Plaintiffs, the writ would order Federal Defendant "to take steps . . . to ensure the apparent errors made during the 2022 elections do not recur" and bring down the error rates Plaintiffs computed. (*Id.* at PageID.43, 50.) Although Plaintiffs maintain that they are not challenging or seeking to undo the 2022 election results, they make various requests related to that election, asking the Court to: (1) formally recognize that Michigan's voter registration rolls had hundreds of thousands of apparent errors in the 2022 Election, (2) order Defendants to ministerially correct the apparent errors in the 2022 election, and (3) order Defendants to "ascertain to the Court's satisfaction the reasons why the 2022 errors occurred." (*Id.* at PageID.53.) Plaintiffs also ask the Court to order the State to submit voter registration requests to the Department of Homeland Security to "verify citizen or immigration status . . . whenever there exist any reliable indicators that an applicant or registered voter may not be a U.S. citizen." (*Id.*) Then, citing

3

"permissible causes of action under NVRA and HAVA," Plaintiffs ask the Court to order that "the State of Michigan may not certify the 2024 General Election unless and until the relevant [defendants] have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and state law and with fewer than the maximum errors permissible." (*Id.*) Last, Plaintiffs ask the Court to order Defendants to perform their duties as "the law intended," including "investigating, and *where warranted in their discretion*, prosecuting persons or entities for failing to perform their duties in conformity with the law." (*Id.* at PageID.53–54 (emphasis added).)

Federal Defendant now moves to dismiss.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction over the action before it and can be either a facial or factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In facial attacks, the court accepts the complaint's allegations as true; in factual attacks, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* On a Rule 12(b)(1) motion, "the plaintiff has the burden of proving jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). When challenged, jurisdictional issues must be resolved first, as a court cannot proceed without jurisdiction. *See id.*

A Rule 12(b)(6) motion to dismiss challenges whether the plaintiff has sufficiently stated a claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive. *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint. However, . . . if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claims," the court "can then consider them in resolving the Rule 12(b)(6) motion." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

## ARGUMENT

### I.   Plaintiffs Lack Standing to Sue Federal Defendant.

Plaintiffs fail to satisfy the most basic requirement for any suit to proceed in federal court—Article III standing to sue. Article III of the Constitution confines federal judicial power to "Cases" and "Controversies," which "can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). This "bedrock constitutional requirement" must be met before a court may reach

the merits of a party's claim. *Id.* "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* at 676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

The "irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. As discussed below, Plaintiffs fail to meet their burden for each element.

**A.  Plaintiffs fail to establish injury in fact.**

To start, Plaintiffs' allegations do not amount to injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations, quotation marks omitted). To be "concrete," the injury must be "real and not abstract," such that the plaintiff has "a personal stake in the outcome." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. And where no actual injury is alleged, the injury must be "*certainly impending*" to meet imminence. *Clapper*, 568 U.S. at 410. Injury in fact is not met where a plaintiff merely asserts a

"generalized grievance" in which "the impact on [the] plaintiff is plainly undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575 (cleaned up).

Plaintiffs' alleged injuries do not meet any of these requirements. Plaintiffs allege they "have been and are currently harmed by the State of Michigan voting systems currently and formerly in use in Michigan state and federal elections" because the systems "violate" federal and state election laws, the Constitution, and federal civil rights laws "pertaining to voter registration rolls, transparency, compliance, and certification of the voting systems." (ECF No. 1, PageID.17.) Plaintiffs allege that Defendants "have allowed, and continue to allow," these alleged violations. (*Id.*) This injury is not theirs alone, rather it is shared by "all Michigan voters" and, they assert, "would cease to exist or be greatly relieved" by obtaining their requested relief. (*Id.*)

Individually, some plaintiffs also allege injury related to the 2022 election, which isn't being challenged. (*Id.* at PageID.15–16.) Mauro-Vetter alleges that he "uncovered voting irregularities" through FOIA requests and some of his FOIA requests "were ignored." (*Id.* at PageID.15.) Mantravadi alleges that he is the CEO of a for-profit business that was "negatively impacted due to the 2022 Michigan elections by data manipulation of vote history records," leading to a "loss of customer base." (*Id.* at PageID.16.) O'Hallorin was a "2022 election challenger"

who alleges his "rights were violated due to [defendants'] failure to enforce federal and Michigan state election laws." (*Id.*) Brandenburg was a gubernatorial candidate in 2022 who allegedly suffered "financial injury through campaign investments spent to run for office where the 2022 election was not held to proper . . . standards for election integrity." (*Id.*)

As to the other plaintiffs, no specific injuries are alleged. For Giacobazzi, the complaint just says that he was a 2022 recount and poll challenger and is currently running for Orion Township Clerk; for Somberg, it identifies him as a "citizen of Michigan, Oakland County"; and for United Sovereign Americans, it says that the organization discovered "evidence of registration issues in the 2020 and 2022 elections" and "is not seeking a distinct form of relief." (*Id.* at PageID.16–18.) Finally, it is not clear what the basis is for alleging that Michigan Fair Elections Institute has standing, as the complaint is largely silent on its role, saying only that it "is not seeking a distinct form of relief." (*Id.* at PageID.18.) The complaint does not allege that the individual plaintiffs are members of either organization, and the organizations base their standing on the individual plaintiffs.[1] (*See id.*)

---

[1] The complaint does not attempt to invoke organizational or associational standing for United Sovereign Americans or the Michigan Fair Elections Institute. (ECF No. 1, PageID.18.) In any event, the complaint's allegations do not meet organizational standing or associational standing. *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) (no associational standing where members do not have standing "in their own right," and no organizational standing based on past costs spent).

All told, these allegations do not come close to constituting injury in fact. First, rather than being "concrete and particularized," Plaintiffs' injuries are textbook generalized grievances. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Plaintiffs do not allege that anything real or personal is at stake for them if the 2024 election proceeds without their interruption. (*See* ECF No. 1, PageID.16–18); *Clapper*, 568 U.S. at 411. All Plaintiffs say is that they were and will be "harmed" by Michigan's "voting systems" because the systems "violate" laws. (ECF No. 1, PageID.17.) But "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable." *See Lujan*, 504 U.S. at 575. And despite the thousands of registration issues purportedly "uncovered" by United Sovereign Americans, tellingly, no Plaintiff alleges that these issues impacted their ability to register for the 2024 election. *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (noting plaintiffs' allegations of past election issues failed to meet injury in fact because, *inter alia*, "they do not allege that [the issues] ever happened to any of them or in any election in which they were candidates"). As it

9

stands, Plaintiffs' injuries do not meet the "concrete and particularized"

requirements of injury in fact.

Second, Plaintiffs cannot show their alleged harm is "actual or imminent," as

opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (citing *Whitmore*

*v. Arkansas*, 495 U.S. 149, 155 (1990)). As alleged, Plaintiffs "believe and

therefore aver" that the 2024 election will violate various laws, but Plaintiffs do

not base their beliefs in anything tangible, and "[a]llegations of possible future

injury do not satisfy the requirements of Article III." (ECF No. 1, PageID.51–52);

*Whitmore*, 495 U.S. at 158. Plaintiffs' allegations rest on "speculative fear,"

*Clapper*, 568 U.S. at 410, that registration issues will occur and somehow lead to

unreliable election results. This "highly attenuated chain of possibilities [] does not

satisfy the requirement that threatened injury must be certainly impending," and

because Plaintiffs do not offer anything more, their allegations do not meet

imminence. *See id.*

Nor can Plaintiffs meet standing to the extent they "incurred certain costs"

related to the 2022 election. *Id.*; (ECF No. 1, PageID.16–17). Nothing ties those

alleged costs to the 2024 election, and Plaintiffs "cannot manufacture standing

merely by inflicting harm on themselves based on their fears of hypothetical future

harm that is not certainly impending." *Clapper*, 568 U.S. at 416; *FDA v. All. for*

*Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not

suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way."). At bottom, Plaintiffs' fears about the 2024 election amount to mere guesswork, not injury in fact. *See, e.g.*, *Republican Nat'l Comm. v. Benson*, No. 24-262, --- F. Supp. 3d ---, 2024 WL 4539309, at *9 (W.D. Mich. Oct. 22, 2024) (holding plaintiffs' fears of unlawful voting, as "psychic injury," do not amount to injury in fact (quoting *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F. 4th 410, 415 (6th Cir. 2015))). Plaintiffs lack standing accordingly.

**B.      Plaintiffs do not meet causation or redressability.**

Beyond failing to allege injury in fact, Plaintiffs cannot establish the remaining elements of standing: causation and redressability. For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Lujan*, 504 U.S. at 560 (cleaned up). For redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* "When a [plaintiff] challenges the defendant's actions with respect to third parties . . . , it is 'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." *Arizona v. Biden*, 40 F. 4th 375, 383 (6th Cir. 2022).

Here, Plaintiffs' alleged injuries from Federal Defendant are that Federal Defendant has various enforcement, policing, and prosecution powers that have not been employed, or have not worked, to Plaintiffs' satisfaction. (ECF No. 1, PageID.30–33, 42, 49–52.) Plaintiffs believe election fraud may be occurring by third parties and that Defendants "have ignored or dismissed" their concerns. (*Id.* at PageID.30–33, 37.) But Plaintiffs do not allege that their alleged injuries—fears that the 2024 election results will be unreliable—can be traced to Federal Defendant in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the complaint, nor do Plaintiffs provide examples of supposed action that should have been taken. Without such allegations—or anything like them—Plaintiffs' alleged injury is not "fairly traceable" to Federal Defendant.

Plaintiffs also cannot establish that their injuries are redressable by this Court. The relief they seek against Federal Defendant is a mandamus order that Defendant "perform [] duties as the law intended," to include "investigating, and where warranted in [his] discretion, prosecuting persons or entities." (ECF No. 1, PageID.53–54.) As an initial matter, it is unclear how such an order "would remedy [Plaintiffs'] alleged injury," as Plaintiffs have not alleged that they have suffered any specific injury based on Federal Defendant's supposed inaction. *See Lujan*, 504 U.S. at 569. It is well-established that "federal courts are generally not

the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 680. Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area." *Id.* at 679. Because Plaintiffs cannot establish that their requested relief remedies their alleged injuries, or can even be granted by this Court, they lack redressability.

*          *          *

Plaintiffs cannot meet their burden of establishing standing to sue Federal Defendant. The Court should dismiss their complaint for lack of jurisdiction accordingly.

## II. The Court Lacks Jurisdiction Over Plaintiffs' Mandamus Claim.

Likewise, Plaintiffs' mandamus claim fails for lack of jurisdiction. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find

13

that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Mandamus is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quotation omitted). "Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Id.*; *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

Plaintiffs fail to meet the high bar that has been set for mandamus relief. They do not establish any "duty owed" by Federal Defendant within the meaning of § 1361. *See Mackzo*, 814 F.2d at 310. Such a duty "must be a mandatory or ministerial obligation" that "is plainly defined and peremptory." *Id.* "If the alleged duty is discretionary or directory, the duty is not owed." *Id.*

Plaintiffs' complaint contains no such allegations. The "duty" they allege is that Federal Defendant "enforce[s] and police[s]" the NVRA and HAVA in Michigan by "investigating, and where warranted in their discretion, prosecuting persons or entities." (ECF No. 1, PageID.49–54.) Plaintiffs' allegations, therefore, concede that they ask this Court to enforce a discretionary duty, for which there is

no mandamus remedy. *See Mackzo*, 814 F.2d at 310. Indeed, as explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. Accordingly, "[m]andamus will not lie to control the exercise of this discretion." *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970); *see also Jarrett v. Ashcroft*, 24 F. App'x 503, 504 (6th Cir. 2001) (affirming dismissal of mandamus action to compel U.S. Attorney General to investigate and prosecute plaintiff's allegations "because defendants owed [plaintiff] no mandatory duty"); *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 489 (6th Cir. 2001) (affirming dismissal of mandamus action that sought a court order directing the FBI to "address its duties and obligations to protect citizens"). Plaintiffs thus cannot establish that Federal Defendant owes them a clear nondiscretionary duty, so their mandamus claim fails.

Nor can Plaintiffs establish a clear right to relief, specifically for their allegations that HAVA has been violated. Plaintiffs allege violations of HAVA based on the error rate computed by United Sovereign Americans' "expert analysists" that Plaintiffs claim exceeds HAVA's acceptable error rate. (ECF No. 1, PageID.24–27.) Yet, as Plaintiffs acknowledge, HAVA's error rate pertains to "voting systems," which refers to the "hardware-related errors," not the registration issues Plaintiffs' complaint identifies. *See* U.S. Election Assistance Comm'n, *2015 Voluntary Voting System Guidelines*, 79–80, A-20–A-21, https://www.eac.gov/

15

sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf. (2015); (ECF

No. 1, PageID.10); *see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of

the voting system in counting ballots" while excluding errors "attributable to an act

of the voter"). The factual errors that Plaintiffs allege are thus inapposite to the

HAVA violations alleged, so Plaintiffs cannot establish a "clear right to relief"

under HAVA. Plaintiffs' mandamus claim should be dismissed for this reason, too.

## III.   Plaintiffs' All Writs Act Claim Must Be Dismissed.

Last, to the extent Plaintiffs bring their All Writs Act claim against Federal

Defendant,[2] it must be dismissed. The All Writs Act provides that "[t]he Supreme

Court and all courts established by Act of Congress may issue all writs necessary

or appropriate in aid of their respective jurisdictions and agreeable to the usages

and principles of law." 28 U.S.C. § 1651. The Act enables federal courts to issue

such commands "as may be necessary or appropriate to effectuate and prevent the

frustration of orders it has previously issued in its exercise of jurisdiction otherwise

obtained." *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977). It does not

authorize courts "to issue ad hoc writs whenever compliance with statutory

procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S.

Marshals Serv.*, 474 U.S. 34, 43 (1985). "Where a statute specifically addresses the

---

[2] This claim is generally brought against "Respondents," but as pleaded it seems
more directed towards the State Defendants. (ECF No. 1, PageID.42–52.)

particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.*

Plaintiffs' All Writs Act claim mirrors their mandamus claim against Federal Defendant. (*See* ECF No. 1, PageID.42–52.) Plaintiffs seek the same writ of mandamus under both statutes—one compelling Federal Defendant to enforce and police the NVRA and HAVA. (ECF No. 1, PageID.42–52.) But the All Writs Act does not provide an independent source of jurisdiction, so Plaintiffs are not separately entitled to mandamus relief under it. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Plaintiffs cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Plaintiffs do not assert any other claims in their complaint and, in fact, expressly disclaim other statutory authority for their claims. (*See* ECF No. 1, PageID.44–45 (alleging Plaintiffs have no remedy other than mandamus so that Defendants will enforce HAVA and NVRA but they are not bringing a "private cause of action" under those statutes).) The Court should therefore dismiss Plaintiffs' All Writs Act claim against Federal Defendant.

**CONCLUSION**

For these reasons, the Court should grant Federal Defendant's motion and dismiss all claims against Federal Defendant.

Respectfully submitted,

**Dawn N. Ison**
United States Attorney

s/Priya Bodary
_____
**Priya Bodary** (CA319527)
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
(313) 226-0831
Email:  Priya.Bodary@usdoj.gov

Date:  November 18, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United Sovereign Americans, Inc., et al., | |
| Plaintiffs, | Civil No. 24-12256 |
| v. | Honorable Robert J. White Mag. Judge Anthony P. Patti |
| Jocelyn Michelle Benson, et al., | |
| Defendants. | |

## BRIEF FORMAT CERTIFICATION FORM

I, Priya Bodary, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (not "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety (not in minuscript), *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.


s/ Priya Bodary
**Priya Bodary**
Assistant U.S. Attorney
Attorney for Defendant Merrick Garland