Bruce L. Castor, Jr.
PA I.D. No. 46370
Attorney for Petitioners

---

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN –SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. <br> 167 Lamp and Lantern Village, Suite 194 <br> Chesterfield, Missouri 63017 <br><br> *And* <br><br> MICHIGAN FAIR ELECTIONS INSTITUTE <br> P.O. Box 41 <br> Stockbridge, Michigan 49285 <br><br> *And* <br><br> TIMOTHY MAURO-VETTER <br> 6505 Arrowhead Ct. <br> Davisburg, Michigan 48350 <br><br> *And* <br><br> BRADEN GIACOBAZZI <br> 6 Parakeet Hill Dr. <br> Orion Twp, Michigan 48359 <br><br> *And* | CIVIL ACTION <br><br> Case No.: 24-12256 <br><br><br> HON. ROBERT WHITE <br><br> MAG. ANTHONY P. PATTI <br><br><br> **PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS MICHIGAN SECRETARY OF STATE JOCELYN BENSON AND MICHIGAN ATTORNEY GENERAL DANA NESSEL'S MOTION TO DISMISS** |

i

PHANI MANTRAVADI
8173 Hillside Lakes Dr.
Brighton, Michigan 48116

   *And*

PHILIP O'HALLORIN
294 Cayuga Rd.
Lake Orion, Michigan 48362

   *And*

DONNA BRANDENBURG
6842 Byron Shores Ct. SW
Bryon Center, Michigan 49315

   *And*

NICK SOMBERG
1493 Rivona Dr.
Waterford Twp, Michigan 48328

                    *Petitioners,*

   v.

JOCELYN BENSON IN HER
OFFICIAL CAPACITY AS THE
MICHIGAN SECRETARY OF STATE
430 W Allegan Street
Richard H. Austin Building – 4th Floor
Lansing. Michigan 48918

   *And*

MICHIGAN BUREAU OF
ELECTIONS
1250 Wilson St.
Marquette, Michigan 49855

*And*

DANA NESSEL, IN HER OFFICIAL
CAPACITY AS ATTORNEY
GENERAL OF MICHIGAN
525 W. Ottawa St.
Lansing, Michigan 48906

     *And*

MERRICK GARLAND, IN HIS
OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE
UNITED STATES
950 Pennsylvania Avenue NW
Washington, District of Columbia
20530

                *Respondents.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.........................................................................v

I.   SUMMARY OF ARGUMENT ...........................................................1

II.  ARGUMENT...................................................................................3

   A.   The Amended Complaint contains allegations sufficient to invoke federal

   jurisdiction. .....................................................................................3

   B.   Petitioners have stated a valid *mandamus* relief under the All Writs Act

   because it is the only remedy available to adjudicate Petitioners' claims............11

III.   CONCLUSION...............................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Anderson v. United States*,
    417 U.S. 211 (1974)……………………………………………………...……13

*Baker v. Carr*,
    369 U.S. 186 (1962)………………………………….……………….…..4

*Cheney v. United States Dist. Ct.*,
    542 U.S. 367 (2004)…………………………………………………15, 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)……………………………….……………3,4

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978)………………………………………………..5

*Federal Election Comm'n v. Akins*,
    524 U.S. 11 (1998)………………………………………..….4, 5

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)……………………………….………………6

*Gill v. Whitford*,
    585 U.S. 48 (2018)…………………………….……………….……3

*Gillis v. U.S. Dept. of Health and Human Servs.*,
    759 F.2d 565 (6th Cir. 1985)………………………………………...6

*Gray v. Sanders*,
    372 U.S. 368 (1963)……………………………..………..…………4

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)…………………………………………………6

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)…………………………………………..…15

*In re: Coy*,
     127 U.S. 731 (1888)………………………………………….……….13

*Lujan v. Defenders of Wildlife*,
     504 U.S. 555 (1992)………………………………….………...1, 3, 4

*Massachusetts v. Envtl. Prot. Agency*,
     549 U.S. 497 (2007)………………………………………………5

*Memphis A. Philip Randolph Inst. v. Hargett*,
     2 F.4th 548 (6th Cir. 2021)…………………………..………4

*Oregon v. Mitchell*,
     400 U.S. 112 (1970)……………………………………………..13

*Reynolds v. Sims*,
     377 U.S. 533 (1964)………………………………….……….12

*Spokeo, Inc. v. Robins*,
     578 U.S. 330 (2016)…………………………...……….3

*Summers v. Earth Island Inst.*,
     555 U.S. 488 (2009)………………………………………….6

*Tenn. Republican Party v. Sec. and Exch. Comm'n*,
     863 F.3d 507 (6th Cir. 2017)………………………..……………6

*United States v. Slone*,
     411 F.3d 643 (6th Cir. 2005)………………………….……13

*Wilbur v. United States*,
     281 U.S. 206 (1930)……………………………………….16

**Statutes**                   **Page(s)**

28 U.S.C. § 1331…………………………………….……….16

28 U.S.C. § 1367(a)……………………………………………16

28 U.S.C. § 1651(a)………………………………….……………15

52 U.S.C. § 20501……………………………………………….…………………2

52 U.S.C. § 20501(a)……………………………………………………………...15

52 U.S.C. §§ 20501(b)(3)-(4)……………………………………...………………14

52 U.S.C. §§ 20507(a)(4)……………………………………………...……………14

52 U.S.C. §§ 21081(a)(1)(A)(ii)…………………………………….…..…………14

52 U.S.C. §§ 21081(a)(5)……………………………………….………....………13

52 U.S.C. § 21083(a)(1)(A)……………………………………….…..……………15

52 U.S.C. § 20901…………………………………………………………………..2

52 U.S.C. § 21111…………………………………………………………………14

**Other Authorities**                                        **Page(s)**

U.S. Const. art. I, § 4……………………………………………….11, 13, 16, 17

U.S. Const. art. I, § 8, cl. 18…………………………………………………13

U.S. Const. art. III, § 2………………………………………………………….3

## I.      SUMMARY OF ARGUMENT

Respondent, United States Attorney General Merrick Garland, (*hereinafter* "Respondent") asserts that this Court should dismiss Petitioners' claim because they lack subject-matter jurisdiction. Petitioners, United Sovereign Americans, Inc. (*hereinafter* "USA"), Michigan Fair Elections Institute, Timothy Maura-Vetter, Braden Giacobazzi, Donna Brandenburg, and Nick Somberg (collectively Petitioners), established Article III standing in the Amended Complaint.    A complaint must simply *allege* standing; standing need not be *proven* at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Complaint. Qualified voters have constitutionally protected voting rights, and that an official's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners allege in actions by Respondent which caused direct injury to their right to vote. As further explained below, the Complaint appropriately alleges a particularized injury and imminent risk of future harm rather than a generalized grievance shared by the community. Petitioners respectfully suggest that they possess standing to invoke federal jurisdiction.

Respondent also contends that Petitioners do not establish extraordinary circumstances nor show a clear duty to act under *mandamus*. Respondent trivializes

the extraordinary circumstances that exist in this matter. The right to vote is the critical aspect of representative republic, and the evidence provided in the complaint shows clear violations by state officials and clear inaction by the federal Respondent to cure the State violations. This failure to act has led to widespread election irregularities all over the county and will continue to occur unless Respondent acts and enforces federal election law. Federal Respondent has a duty to enforce and prosecute federal elections laws, and if these election laws continue to be unenforced, individuals including Petitioners will be deprived of the right to fair elections.

Lastly, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the court lacks jurisdiction. The All Writs Act is one of the few tools that Petitioner can use to stop Respondent's inaction against Michigan State Officials continuing to violate Federal election law. In the Help Americans Vote Act[1] (hereinafter "HAVA") and the National Voter Registration Act[2] (hereinafter "NVRA"), there is explicit language where the Respondent may act if there are nonuniform and discriminatory acts establishing a clear duty. There are clear election uniformity issues since Michigan State Officials have elected not to follow federal laws and have refused to comply with congressionally mandated

---

[1] 52 U.S.C. §§ 20901 *et seq*.
[2] 52 U.S.C. §§ 20501 *et seq*.

2

minimum allowed error rates. The All Writs Acts is the only way to hold Respondent accountable for his inaction.

## II.   **ARGUMENT**

A. <u>The Amended Complaint contains allegations sufficient to invoke federal jurisdiction.</u>

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan*, 504 U.S. at 560-561. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred

or be likely to occur in the near future. *Clapper*, 568 U.S. at 409. Importantly, "if one party has standing, then identical claims brought by other parties to the same lawsuit are also justiciable." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555 (6th Cir. 2021).

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing.  Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote *did not* amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id*. In *Massachusetts v. Envtl. Prot. Agency*, the ""…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" Id. at 498-499. Further, the Court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A.*, 549 U.S. 497, 521 (2007); citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, *arguendo*, are the effects of greenhouse gas emissions, as in *Massachusetts v. E.P.A. supra*). In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related

injuries from Respondent also have standing to seek review by federal courts under Article III, just as did those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Gillis v. U.S. Dept. of Health and Human Servs.*, 759 F.2d 565, 579 (6th Cir. 1985). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Tenn. Republican Party v. Sec. and Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017). However, the specificity requirements do not mandate identification of all individuals who were harmed if "*all* the members of the organization are affected by the challenged activity." *Id*. (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).

The Complaint here alleges standing sufficient to establish subject-matter jurisdiction under Article III. Respondent, however, argues that Petitioners lack Article III standing for failure to allege an injury-in-fact with requisite specificity as to the deprivation of a legally protected interest and the imminent risk of future harm. Consider that Timothy Mauro-Vetter, a qualified voter in Michigan, along with USA, has alleged they sent multiple written inquiries to state election officials requesting information relative to the state's election law compliance. Michigan officials mostly rebuffed these efforts or provided outdated information. This is a factual issue for later in the case.  The information Timothy Mauro-Vetter did receive showed a massive number of apparent errors in the voter registration index that directly impacted the votes recorded in Michigan's 2022 election. This data was discussed at length in the complaint and if not corrected will cause the same harm in 2026 and following federal elections due to the cyclical nature of elections.[3] The Respondents could not state for any certainty that the data collected from Petitioner's FOIA requests was inaccurate. Consider further, Donna Bradenburg, a candidate for Michigan Governor, was affected directly by the election results. So too Braden Giacobazzi, a qualified voter, recount and poll challenger, and candidate for Orion Township Clerk in Michigan in 2024, will be directly impacted if this Court does not require Respondent to enforce federal law. Phani Mantrvadi is a Michigan citizen

---

[3] Data for the 2024 General Election is not yet available to Petitioners.

7

who is CEO of CheckMyVote.com, whose for profit business was negatively impacted and will be further impacted because the State of Michigan supplied him compromised and inaccurate election data. Nick Somberg, qualified voter in Michigan who cast ballots in 2022 and will again in 2026, will have his vote diluted if Respondent, in violation of Congressional mandates, permits large numbers of people to vote (other than provisionally) whose registrations are suspect.

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in Michigan will reoccur since Michigan election officials, as alleged in the complaint, have done nothing to correct those errors despite notice. Respondent has done nothing to enforce or ensure uniformity in how Michigan and the Nation carry out federal elections. These irregularities are directly caused by the Respondent's inaction.

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to State Officials requesting transparency as to Michigan's compliance with federal election laws and

explanations regarding documented voter and registration irregularities. In the same vein, the State Officials did not deny the whole community of such requests. State Officials denied Petitioners' requests specifically. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners themselves, took these actions which distinguished Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioners and Petitioners' members legitimate concerns over whether Michigan is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Complaint states a sufficiently plausible cause of action, at the early stages of litigation, to confer presumptive standing upon Petitioners. Petitioners set forth in the Complaint a series of factual allegations establishing that named Petitioners are individuals qualified to vote in Michigan whose votes were diluted in 2022 through Respondent's failure to ensure that Michigan's voting systems and voter registration records met certain

federal standards prior to certification. If the errors identified are not corrected, the election's integrity will continue to be called into question. Petitioners have identified said anomalies and have pled they brought them to the attention of Michigan election officials who bear the responsibility delegated by the Michigan legislature to regulate federal elections. Respondent has failed to investigate and address these anomalies despite Respondent's duty and responsibility to do so. No other means exist to require a government official to perform his duties apart from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the Attorney General to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform his jobs. Petitioners seek court intervention to require Respondent simply to *do* his jobs and take whatever action Respondent considers appropriate in order to comply with Congressional mandates. Petitioners contend the Court ought to order Respondent to report, investigate, and enforce to the Court's satisfaction the reasons for such significant discrepancies, for example, how it is possible that in 2022, various Michigan county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast?

Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, sufficiently to confer subject-matter jurisdiction upon this Court in order to seek the requested relief.

B. Petitioners have stated a valid *mandamus* relief under the All Writs Act because it is the only remedy available to adjudicate Petitioners' claims.

Petitioners have established federal jurisdiction for a *Mandamus* Claim and for Respondent to refuse the relief sought is to discount the Petitioners' right to vote. Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers unambiguously intended Congress retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the *default* authority to regulate federal elections lies with the several states in the *absence* of acts of Congress. This makes the states subordinate to Congress when Congress from time to time chooses to *act*. When Congress chooses to do so, it becomes the duty of the Attorney General of the United States to carry out Congress' will. The Framers *intentionally* intertwined the powers of the various states with

those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. The Constitution reserves to Congress the *ultimate* power to regulate federal elections, while simultaneously delegating the *presumptive* power to individual state legislatures. The Michigan General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State. The Secretary of State, thus, acts as a quasi-federal officer when mandated to carry out the will of Congress. The Secretary of State fails or refuses to carry out Congress' intent, it falls to Respondent to require that quasi-federal official to adhere to federal law. Only Respondent is empowered to enforce and execute the will of Congress.

Respondent has received notice of the numerous election irregularities and has made a decisive choice not to enforce federal law. Petitioners have no where else to turn but to the federal district courts for relief in the absence of Respondent Attorney General's refusal to enforce federal law. Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888);

*United States v. Slone*, 411 F.3d 643, 647 (6th Cir. 2005). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970).

Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Michigan's otherwise default absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. Respondent is the only existing enforcement authority to hold the State Officials accountable. Without this Honorable Court enforcing such accountability,  States are free to actively ignore federal law and regulations in any federal election.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide

the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. HAVA states "[the] Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief ... as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." 52 U.S.C. § 21111.  Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. §

21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Michigan's election laws. The NVRA states "The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." 52 U.S.C. §§ 20501(a). A writ of *mandamus* is the enforcement mechanism through which the Respondent can be held accountable to Congress for refusing to enforce Congressional legislation.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a

remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent argues that *mandamus* is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of *mandamus*.[4] Respondent cannot dispute that Congress delegated the power to regulate and enforce the administration of elections under HAVA and NVRA to the Attorney General. Respondent cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent cannot dispute that Congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Attorney General. It follows, then, that Respondent cannot dispute that he is required to enforce HAVA and NVRA in Michigan's federal elections, coming to this court to require Michigan to conduct such elections in accordance with federal law.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify extraordinary circumstances such as those at issue here. But

---

[4] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of *mandamus* is "in aid of" a matter over which this Court has jurisdiction.

Respondent argues, despite Congress' undisputed and superseding power to regulate federal elections, he is *not* required to comply with Congressional election legislation and therefore Petitioners cannot be afforded *mandamus* relief under the All Writs Act against Michigan election officials on the basis that they are not a *federal* officials. In other words, according to Respondent, no Constitutional mechanism exists by which the Attorney General may hold *state* election officers accountable for violating *federal* law. Accepting Respondent's contention as true would lead to an absurd result, as Respondent state officials would be effectively empowered to regulate and administer federal elections *without any Congressional oversight or enforcement whatsoever* in direct contradiction of the plain language of, *inter alia*, Article I, sec. 4 of the Constitution. The language of the Elections Clause clearly precludes this outcome, as the Constitution states that Congress retains the *ultimate* authority to regulate federal elections. The All Writs Act exists as an enforcement mechanism through which Congress, through Respondent, may enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Here, *mandamus* relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the *only* remedy available to compel Respondent state officials' subservience to Congress' ultimate authority to regulate the federal election processes. Petitioners are asking this Court to aid in addressing

systemic issues raised in the Complaint by requiring Respondent to demand state officials follow federal election legislation. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of *mandamus*.

### III.   <u>CONCLUSION</u>

Based on the foregoing, Petitioners respectfully request this Honorable Court deny Attorney General Respondent's Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr*

Date <u>December 2, 2024</u>      By:   Bruce L. Castor, Jr.
PA I.D. No. 46370
van der Veen, Hartshorn, Levin & Lindheim
1219 Spruce Street
Philadelphia, PA 19107
Direst: (215) 422-4194
Fax: (215) 546-8529
Email: bcastor@mtvlaw.com
*Counsel for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2024, a copy of the foregoing Petitioners' Response in Opposition to Attorney General Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*
Bruce L. Castor, Jr.
Counsel for Petitioners

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant Eastern District of Michigan Local Civil Rule 7.1(d)(3)(A). I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

*/s/ Bruce L. Castor, Jr*
Bruce L. Castor, Jr.
PA I.D. No. 46370
*Counsel for Petitioners*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED SOVEREIGN AMERICANS, INC. et al,

      Petitioners,

v.

MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, et al.

      Respondents.

Case No. 24-12256

Honorable Robert J. White

## BRIEF FORMAT CERTIFICATION FORM

I, Bruce L. Castor, Jr., certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒except for footnotes and necessary block quotes, the brief is double spaced (<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A;

☒if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.


*/s/ Bruce L. Castor, Jr*
Bruce L. Castor, Jr.
Attorney for Petitioner