UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., et al.,<br><br>    Petitioners,<br><br>v.<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State, et al.,<br><br>    Respondents. | Case No. 24-cv-12256<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING RESPONDENTS' MOTIONS TO DISMISS THE PETITION FOR A WRIT OF MANDAMUS**

I.    <u>Introduction</u>

United Sovereign Americans, Inc., the Michigan Fair Elections Institute, and several Michigan residents commenced this mandamus action against Michigan's Secretary of State Jocelyn Benson, Michigan's Bureau of Elections, the state's attorney general, Dana Nessel, and United States Attorney General Pamela Bondi.[1]

---

[1] Pamela Bondi became the United States Attorney General on February 5, 2025. U.S. Department of Justice, Office of the Attorney General, Staff Profile, Attorney General Pamela Bondi, https://www.justice.gov/ag/staff-profile/meet-attorney-general. Pursuant to Federal Rule of Civil Procedure 25(d), Pamela Bondi is substituted for Merrick Garland as the federal respondent in this action.

The mandamus petition alleges that respondents are ignoring federal and state election laws, which is subverting the integrity of Michigan's general elections.

Before the Court are respondents' separate motions to dismiss the petition. (ECF Nos. 12, 18). Petitioners responded in opposition. (ECF Nos. 16, 19). Respondents filed their replies. (ECF Nos. 17, 21). After reviewing the briefs, the Court concludes that oral argument is not necessary to decide the motions. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the motions are granted and the petition is dismissed with prejudice.

II.    <u>Background</u>

   *A.    Factual Allegations*

Petitioners are a collection of organizations and individual Michigan residents who object to the way statewide elections are being conducted in Michigan. They claim that respondents are not following and enforcing federal and state laws that are designed to ensure accurate election results. And they want "Michigan's 2024 and subsequent combined federal and state general elections [to] produce reliable results with the margin of error rate allowed" under federal law. (ECF No. 1, PageID.46, ¶ 219).

Collecting data from the 2022 general election, the mandamus petition specifically alleges that (1) Michigan's eligible registered voter list is inaccurate, (2) ineligible voters are casting ballots in Michigan general elections in alarming

numbers, (3) Michigan's voting data collection measures are unreliable, and (4) Michigan's voting system error rates exceed the thresholds imposed under federal election law. (*Id.*, PageID.34-42, ¶¶ 168-97; *see also* PageID.24-27, ¶¶ 120-37).

B.    *Standing Allegations*

The mandamus petition delineates the injuries each individual petitioner suffered because of the alleged failures to follow and enforce federal and state election laws.  According to the petition:

> 78.    Timothy Mauro-Vetter is a citizen of Michigan, Oakland County, and uncovered voting irregularities in Michigan's 2022 General Election through Freedom of Information Act ("FOIA") requests, including vote switching, duplicates, delays, and manipulation of voting history.  He also submitted FOIA requests for accurate voter and registration data which were ignored . . .
>
> 79.    Petitioner Branden Giacobezzi is a citizen of Michigan, Oakland County, and was a 2022 recount and poll challenger. Petitioner is a current candidate for Orion Township Clerk in the 2024 election season.
>
> 80.    Petitioner Phani Mantravadi is a citizen of Michigan, Livingston County, and is CEO of CheckMyVote.com [*sic*],[2] a for profit business which was impacted negatively due to the 2022 Michigan elections by data manipulation of vote history records, which led to a loss of customer base due to poor data integrity.
>
> 81.    Petitioner Philip O'Hallorin is a citizen of Michigan, Oakland County, and was a 2022 election challenger whose rights were violated due to Respondents' failure to enforce federal and Michigan state election laws.

---

[2] The correct website appears to be https://checkmyvote.org/ (last visited Apr. 28, 2025).

82.     Petitioner Donna Brandenburg is a citizen of Michigan, Kent County, and was a candidate for Governor of Michigan in the 2022 election season. Petitioner suffered financial injury through campaign investments spent to run for office where the 2022 election was not held to the proper federal or state legal standards for election integrity.

83.     Petitioner Nick Somberg is a citizen of Michigan, Oakland County.

(*Id.*, PageID.15-16, ¶¶ 78-83).

The petition further alleges that United Sovereign Americans, Inc. and the Michigan Fair Elections Institute are Missouri and Michigan-based nonprofit corporations, respectively. (*Id.*, PageID.13, ¶¶ 61-62).  Petitioners maintain that the two organizations possess standing through the individual petitioners, derivatively, because the entities are not "seeking a distinct form of relief." (*Id.*, PageID.17-18, ¶¶ 89-91).

C.    *Procedural History*

Petitioners filed this lawsuit seeking mandamus relief under three substantive statutes: (1) the National Voter Registration Act of 1993, (2) the Help America Vote Act of 2002, and (3) Michigan's Election Law.

The mandamus petition requests an order (1) declaring that the 2022 general election suffered from "hundreds of apparent errors" and describing the types of errors that occurred, (2) directing the state respondents to "ministerially correct" the 2022 general election data errors, ascertain why the errors occurred, and formulate

measures to ensure those errors do not recur in subsequent elections, (3) enjoining state officials from certifying the 2024 general election results until respondents demonstrate that the election comported with the National Voter Registration Act and Help America Vote Act, (4) directing state officials to forward "voter registration requests (and any existing registrations reasonably in question) to the Department of Homeland Security to verify the citizenship or immigration status of persons seeking registration to vote or who are presently on the state's voter rolls," (5) directing respondents to comply with federal and state election laws, and (6) directing Michigan's Attorney General and the United States Attorney General to investigate and prosecute any violations of federal and state election laws. (*Id.*, PageID.52-54).

Respondents now separately move to dismiss the petition. (ECF Nos. 12, 18).

III.   <u>Legal Standards</u>

Federal courts may dismiss a petition for a writ of mandamus pursuant to Federal Rule of Civil Procedure 12(b). *See Gratton v. Wildasin*, No. 21-5824, 2022 U.S. App. LEXIS 17228, at *3, 9 (6th Cir. Jun. 22, 2022) (affirming dismissal of mandamus petition under Rule 12(b)(1) and (6)); *Gratton v. Cochran*, No. 19-5176, 2020 U.S. App. LEXIS 59, at *2, 9 (6th Cir. Jan. 2, 2020) (same).

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction.  Rule 12(b)(1) motions for lack of subject matter jurisdiction may challenge either (1) the facial sufficiency of the

pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial challenges address whether the pleading alleges a basis for subject matter jurisdiction. The Court views the pleading's allegations as true and construes them in the light most favorable to the nonmoving party. *Id.*

Whether a party has standing raises an issue of the Court's subject matter jurisdiction under Rule 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff, as the party invoking federal jurisdiction, carries the burden of establishing the elements of standing. *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 363 (6th Cir. 2021).

IV.   Analysis

Congress invested federal district courts with original jurisdiction over various subject matters through statutory enactment. *See, e.g.,* 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), 1361 (mandamus relief against federal officers, employees, and agencies).

Yet, "[n]o matter what Congress provides by statute, the plaintiff must still satisfy" the federal constitution's Article III "standing prerequisites." *Buchholz v. Tanick*, 946 F.3d 855, 867 (6th Cir. 2020). Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. The doctrine of standing emanates from this "case-or-

controversy" requirement and "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Mandamus petitions are not exempt from Article III's "case-or-controversy" requirement.  *See Hussein v. Beecroft*, 782 F. App'x 437, 441-43 (6th Cir. 2019) (affirming dismissal of mandamus petition on Article III mootness grounds); *see also In re Nat'l Prescription Opiate Litig.*, Nos. 22-3493/3653, 2022 U.S. App. LEXIS 34312, at *19 (6th Cir. Dec. 13, 2022) (concluding that mandamus petitioners lacked Article III standing).

Since this case is at the pleading stage, petitioners must "clearly . . . allege facts demonstrating" (1) an imminent, concrete, and particularized injury-in-fact, that (2) is traceable to respondents' conduct, and (3) can be redressed through a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

A.    *Vote Dilution Theory*

Petitioners lack Article III standing for several reasons.  To begin with, they cannot show that they suffered an injury-in-fact that is concrete and particularized, *i.e.*, the first Article III standing requirement.  The contention that respondents declined to follow and enforce federal and state laws – resulting in the dilution of the individual petitioners' votes in previous elections (ECF No. 1, PageID.45, ¶ 215)

– is "an injury to [their] right to vote like all citizens who participate in the electoral process." *Mirarchi v. Boockvar*, No. 21-126, 2021 U.S. Dist. LEXIS 247842, at *7 (E.D. Pa. Dec. 30, 2021). That class of injury is "so widespread that it amounts to a general grievance rather than a particularized harm." *Id.* at *7; *see also Bost v. Ill. State Bd. of Elections*, No. 23-2644, 2024 U.S. App. LEXIS 21142, at *8 (7th Cir. Aug. 21, 2024) (holding that "to the extent Plaintiffs would suffer any injury" from their vote dilution claim "it would be in a generalized manner and not 'personal and individual' to Plaintiffs"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) ("Vote dilution in this context is a paradigmatic generalized grievance that cannot support standing.") (cleaned up); *Martel v. Condos*, 487 F. Supp. 3d 247, 252-53 (D. Vt. 2020) (same); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) (same); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.").

Petitioners cannot plausibly establish redressability either, *i.e.*, the third Article III standing prong. Assuming they could somehow demonstrate that the diluted votes resulted in a concrete and particularize harm to the individual petitioners, a decision in their favor could never redress that injury. That's because any past elections already occurred – they are "certified and final." *Mirarchi*, 2021 U.S. Dist. LEXIS 247842, at *8-9; *see also King v. Whitmer*, 505 F. Supp. 3d 720,

730 (E.D. Mich. 2020) (finding a 2020 election recount lawsuit moot under Article III because the Michigan Board of State Canvassers had already certified the election and the governor had submitted the slate of electors to the archivist of the United States); *cf. Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021) (discussing how Article III redressability and mootness are "related" but "distinct doctrines").

As for prospective harm from "unreliable" future elections, petitioners lack Article III standing for largely the same reason: the unlawful dilution of the individual petitioners' votes is a generalized grievance, not the concrete and particularized harm necessary to establish an injury-in-fact. *See, e.g., Bost*, 2024 U.S. App. LEXIS 21142, at *8; *Wood*, 981 F.3d at 1314-15. What is more, even if they could somehow demonstrate that they suffered a concrete, particularized harm stemming from past vote dilution, petitioners do not plausibly allege, much less show, that the same irregularities are "certainly impending" to occur in future elections – in other words, imminent. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981-82 (6th Cir. 2020); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient" to establish Article III standing) (cleaned up).

B.     *Non-Vote Dilution Theories*

Insofar as the individual petitioners assert injuries apart from vote dilution, none of those harms confer Article III standing.  For instance, the resources Timothy Mauro-Vetter expended to investigate the accuracy of Michigan's 2022 general election results is not a sufficient injury-in-fact. *See Clapper*, 568 U.S. at 416 (holding that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *see also Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 300-01 (4th Cir. 2022) (holding that the plaintiffs' Article III standing could not be manufactured through making FOIA requests); *Legal Aid Chicago v. Hunter Props., Inc.*, No. 23-4809, 2024 U.S. Dist. LEXIS 177188, at *34-35 (N.D. Ill. Sep. 30, 2024) (same).

Braden Giacobezzi's contention that the purported irregularities in the 2022 general election will recur and undermine his bid to win election as Orion Township Clerk in 2024 is too speculative to qualify as an injury-in-fact.[3] *See Clapper*, 568 U.S. at 409; *see also Clark v. Stone*, 998 F.3d 287, 294 (6th Cir. 2021) ("Speculative

---

[3] Giacobezzi did not win the 2024 election. *See* Oakland County Clerk's Office, November 5, 2024 General Election Results, https://results.enr.clarityelections. com/MI/Oakland/122321/web.345435/#/detail/221.  Notably, he did not amend the petition to challenge the election results.  And it does not appear that he challenged the election results in Michigan state court.

allegations of possible future injury are not sufficient" to show an Article III injury-in-fact) (quotation omitted).

The campaign expenditures Donna Brandenburg incurred during her failed bid to become Michigan's governor in 2022 are not redressable through the mandamus relief proposed in this lawsuit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."); *see also Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 417 (6th Cir. 2021) (same).

And Phani Mantravadi's claim – that unreliable Michigan voting data damaged his business financially by diminishing the accuracy of his voter information website – is not redressable for this same reason. *See Steel Co.*, 523 U.S. at 107; *see also Glennborough Homeowners*, 21 F.4th at 417.

That leaves the organizational petitioners. Since United Sovereign Americans and the Michigan Fair Elections Institute do not purport to have Article III standing themselves (ECF No. 1, PageID.17-18, ¶¶ 89-91), and because the remaining petitioners all lack Article III standing individually, they cannot rely upon the individual petitioners' injuries to maintain this action. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) (stating that "in all standing inquiries, the critical question is whether at least one petitioner has alleged such a personal stake in the outcome of

the controversy as to warrant *his* invocation of federal-court jurisdiction.")
(quotation omitted) (emphasis in original); *see also Tenn. v. United States Dep't of
State*, 931 F.3d 499, 507 (6th Cir. 2019) (same).

Without plausible allegations of imminent, concrete, and particularized
injuries that are redressable, petitioners have "no standing to sue and thus no basis
for moving forward with" their substantive claims. *Shelby Advocates*, 947 F.3d at
982.  "[T]he only function remaining to the court is that of announcing th[is] fact
and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quotation omitted); *see also
Freed v. Thomas*, 976 F.3d 729, 739 (6th Cir. 2020).  Accordingly,

IT IS ORDERED that respondents' motions to dismiss the petition for a writ
of mandamus (ECF Nos. 12, 18) are granted.

IT IS FURTHER ORDERED that the petition for a writ of mandamus (ECF
No. 1) is dismissed with prejudice.

Dated: May 2, 2025                    s/ Robert J. White
                                      Robert J. White
                                      United States District Judge